DESTINY 98 TD, APPELLEE AND CROSS-APPELLEE, AND
BEL FURY INVESTMENTS GROUP, L.L.C., APPELLANT
AND CROSS-APPELLEE, V. JOHN J. MIODÓWSKI ET AL.,
APPELLEES, AND EMPIRE TITLE OF NEBRASKA, INC.,
INTERVENOR-APPELLEE AND CROSS-APPELLANT.
693 N.W.2d 278

Filed March 11, 2005.    No. S-03-1393.

Michael F. Kivett, James J. Bemis, Jr., and Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Jay A. Ferguson for intervenor-appellee Empire Title of Nebraska, Inc.

James H. Monahan, of Monahan & Monahan, for appellees John J. Miodowski and Naomi Miodowski.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This appeal presents the issue of whether a party seeking confirmation of a judicial sale in a tax sale certificate foreclosure proceeding is required to give notice of statutory homestead exemption procedures pursuant to Neb. Rev. Stat. § 25-1531 (Reissue 1995). We conclude that there is no such requirement.

## BACKGROUND

On March 1, 1999, Destiny 98 TD (Destiny 98) purchased Douglas County treasurer's certificate of tax sale No. 99-01220, representing a tax lien on Lot 7, Block 4, Burlington Place Addition, in Douglas County, Nebraska. On September 11, 2002, Destiny 98 filed an amended petition to foreclose liens represented by various tax sale certificates. John J. Miodowski and "____ Miodowski" were alleged to be the owners of the property and were named as defendants in the third cause of action, which pertained to the real property and tax sale certificate described above. On February 21, 2003, Destiny 98 filed a motion for judgment by default with respect to the third cause of action, alleging that the Miodowskis had been properly served with summons but had failed to respond with a timely responsive pleading. On March 7, the district court entered a default judgment and decree ordering a sheriff's sale of the property. Notice of the sale was published in The Daily Record, a legal newspaper in Douglas County, on June 27 and July 4, 11, and 18, 2003. At the sheriff's sale held on July 29, Bel Fury Investments Group, L.L.C. (Bel Fury), purchased the property for $6,360. On August 21, the district court confirmed the sale of the property and ordered that a sheriff's deed be delivered to Bel Fury. Subsequent to execution and delivery of a sheriff's deed dated September 3, 2003, Bel Fury filed a praecipe for writ of assistance.

Several days thereafter, Empire Title of Nebraska, Inc. (Empire Title), filed an ex parte application seeking to intervene in the proceeding and for other relief. In its application, Empire Title represented that it had served as trustee and closing agent in a refinancing of the Miodowski property in August 2003 and that it believed it had distributed funds to satisfy the tax liens represented by the tax sale certificates in foreclosure, but that through "error, omission or misunderstanding," this may not have occurred. The district court quashed the writ of assistance as it

related to the property in question and scheduled an evidentiary hearing for October 1, 2003. On September 23, the Miodowskis filed an application to set aside the confirmation of the sale and the sheriff's deed based on Destiny 98's failure to provide them with a notice of homestead exemption pursuant to § 25-1531. Upon being granted leave to intervene during the hearing on October 1, Empire Title filed a motion to vacate confirmation of the sale on grounds that "the property was not sold in conformity to the provisions of Chapter 25 [of the Nebraska Revised Statutes] for fair value under the circumstances and conditions of the sale, and subsequent sale would realize a greater amount."

In an order entered on October 8, 2003, the district court ruled that § 25-1531 did not apply to proceedings to foreclose tax sale certificates pursuant to Neb. Rev. Stat. § 77-1902 (Reissue 2003) and denied the relief sought by the Miodowskis and Empire Title. However, after conducting a hearing on October 10, the court changed its ruling and concluded in an order entered on November 10 that § 25-1531 was applicable. The district court therefore vacated its prior order confirming the sale because the Miodowskis had not been given notice of the homestead exemption procedures in accordance with § 25-1531. A notice of redemption prior to confirmation accompanied by the payment of $7,198.86 to the clerk of the district court was then filed on behalf of the Miodowskis. In a separate order entered on November 26, the court denied Bel Fury's oral motion for attorney fees, stating that there was no statutory authority or recognized custom whereupon attorney fees would be allowable. Bel Fury then perfected this timely appeal, which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Bel Fury assigns that the district court erred in (1) determining that § 25-1531 and Neb. Rev. Stat. § 40-103 (Reissue 2004) are applicable to the sale of real estate pursuant to the foreclosure of a tax sale certificate under Neb. Rev. Stat. § 77-1901 et seq. (Reissue 2003) and (2) determining that Bel Fury is not entitled to attorney fees.

On cross-appeal, Empire Title assigns that the court committed plain error by failing to find that (1) Destiny 98 did not personally serve the necessary parties with notice of publication of the sheriff's sale as statutorily required and (2) there was a shocking discrepancy in the sale price of the property.

## STANDARD OF REVIEW

■ Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *KLH Retirement Planning v. Okwumuo*, 263 Neb. 760, 642 N.W.2d 801 (2002).

■ An appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion. *Roemer v. Maly*, 248 Neb. 741, 539 N.W.2d 40 (1995).

## ANALYSIS

### NOTICE OF HOMESTEAD EXEMPTION

It is undisputed that the Miodowskis were not given notice of homestead exemption procedures prior to the district court's original order confirming the sheriff's sale. Thus, we are presented with the narrow legal question of whether such notice was required by the applicable statutes. Under § 77-1902, the holder of a tax sale certificate may foreclose the lien for taxes represented by the certificate. The statute provides generally that the foreclosure proceeding shall be "in the same manner and with like effect as in the foreclosure of a real estate mortgage, except as otherwise specifically provided by sections 77-1903 to 77-1917." Section 77-1912 provides, with respect to a tax foreclosure, that the "sheriff shall sell the real property in the same manner provided by law for a sale on execution." Section 25-1531, which applies to real estate mortgage foreclosures, provides in pertinent part that

> [p]rior to the confirmation of sale pursuant to this section, the party seeking confirmation of sale shall, except in the circumstances described in section 40-103, provide notice to the debtor informing him or her of the homestead exemption procedure available pursuant to Chapter 40, article 1. The notice shall be given by certified mailing at least ten days prior to any hearing on confirmation of sale.

Section 25-1531 further provides that

> [u]pon application to the court by the judgment debtor within sixty days of the confirmation of any sale confirmed pursuant to this section, such sale shall be set aside if the court finds that the party seeking confirmation of sale failed to provide notice to the judgment debtor regarding homestead exemption procedures at least ten days prior to the confirmation of sale as required by this section.

In a tax sale certificate foreclosure proceeding, "final confirmation of sale may be had immediately after the sheriff's sale." § 77-1903(2). Section 77-1913 provides that upon a timely motion to confirm a sheriff's sale in a tax sale foreclosure proceeding, "[t]he court shall . . . examine the proceedings and, if they are found to be correct . . . make and enter an order of confirmation of the sale" and "direct the disposition of the proceeds of the sale and order the sheriff to make and deliver to the purchasers, without further cost to them, a sheriff's deed for any real estate not redeemed," subject to certain conditions not relevant here. Section 77-1917, which confers the right to redeem real property which is subject to a tax foreclosure "at any time after the decree of foreclosure and before the final confirmation of the sale," includes no reference to a homestead exemption.

Bel Fury argues that because the tax foreclosure statutes codified at chapter 77 of the Nebraska Revised Statutes do not require notice of a homestead exemption, there is no such requirement in a proceeding to foreclose a tax sale certificate. On the other hand, the Miodowskis and Empire Title argue that because § 77-1902 directs that a tax sale certificate foreclosure is to be conducted "in the same manner and with like effect as in the foreclosure of a real estate mortgage," except where §§ 77-1903 to 77-1917 specifically provide otherwise, the homestead exemption notice requirement set forth in § 25-1531 is applicable.

Bel Fury's argument that statutory procedures for the foreclosure of a tax sale certificate are "separate and distinct" from those governing mortgage foreclosures and execution sales ignores the plain language of §§ 77-1902 and 77-1912, which language establishes a partial linkage between tax foreclosure and mortgage foreclosure procedures. For example, in *KLH Retirement Planning v. Okwumuo*, 263 Neb. 760, 642 N.W.2d 801 (2002),

which was commenced as a tax foreclosure proceeding, we construed § 77-1912 as incorporating the procedure for execution sales set forth in Neb. Rev. Stat. § 25-1501 et seq. (Reissue 1995 & Cum. Supp. 2000). We similarly noted the linkage between the tax foreclosure statutes and those governing mortgage foreclosures in *County of Scotts Bluff v. Bristol*, 159 Neb. 634, 68 N.W.2d 197 (1955), and *Madison County v. Crippen*, 143 Neb. 474, 10 N.W.2d 260 (1943).

Thus, in order to resolve the question of whether notification of homestead exemption rights must be shown before a court can confirm a sheriff's sale in a tax sale certificate foreclosure, it is necessary to consider when such notice is required in a mortgage foreclosure. A "homestead," as defined by Neb. Rev. Stat. § 40-101 (Reissue 2004), is "exempt from judgment liens and from execution or forced sale, except as provided in sections 40-101 to 40-116." Section 40-103 provides: "The homestead is subject to execution or forced sale in satisfaction of judgments obtained . . . (2) on debts secured by mortgages or trust deeds upon the premises executed and acknowledged by both husband and wife, or an unmarried claimant." Section 25-1531, pertaining to mortgage foreclosures, requires that the debtor be notified of homestead exemption procedures prior to confirmation of a sheriff's sale "except in the circumstances described in section 40-103." Thus, a notice of homestead exemption rights is required prior to confirmation of sale only in those mortgage foreclosure proceedings where such rights exist.

The tax sale certificate which is the subject of this foreclosure action reflects delinquent city and county taxes against property situated within the city of Omaha. Such taxes are a "first lien on the property taxed until paid or extinguished as provided by law," taking priority over a mortgage or any other liens. Neb. Rev. Stat. § 77-203 (Reissue 2003). Accord, *Alliance RR. Comm. Credit Union v. County of Box Butte*, 243 Neb. 840, 503 N.W.2d 191 (1993); *Licking v. Hays Lumber Co.*, 146 Neb. 240, 19 N.W.2d 148 (1945); *Coffin v. Old Line Life Ins. Co.*, 138 Neb. 857, 295 N.W. 884 (1941); *Eddy v. Kimerer*, 61 Neb. 498, 85 N.W. 540 (1901).

Neither the Miodowskis nor Empire Title have provided us with any argument or authority supporting the existence of any homestead exemption right which would affect the confirmation

of a sheriff's sale in a proceeding to foreclose the lien for taxes represented by a tax sale certificate. We conclude that the tax lien is superior to any homestead interest which could be claimed by the Miodowskis, and therefore hold that the provisions of § 25-1531 requiring notice of homestead exemption rights do not apply to foreclosure of a tax lien represented by a tax sale certificate. Accordingly, the district court erred in vacating and setting aside its order confirming the sale entered on August 21, 2003.

## ATTORNEY FEES

Bel Fury argues that the district court erred in determining that it was not entitled to recover its attorney fees incurred in this action. As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Kansas Bankers Surety Co. v. Halford*, 263 Neb. 971, 644 N.W.2d 865 (2002); *Salkin v. Jacobsen*, 263 Neb. 521, 641 N.W.2d 356 (2002). Here, the district court found no statutory authority or uniform course of procedure which would permit an award of attorney fees. We agree, and conclude that this assignment of error is without merit.

## CROSS-APPEAL

In its cross-appeal, Empire Title states that it "does not claim error by the Douglas County District Court on the issues that it addressed," but asserts that if error is found, the district court erred in not setting aside its original order confirming the sale based upon a claimed deficiency with respect to notice of the sheriff's sale and a "shocking discrepancy in sale price." We note that the issues which are the subject of the cross-appeal were not raised by timely appeal from the order confirming the sheriff's sale entered on August 21, 2003. After that order became final, Empire Title, as intervenor, asked the district court to vacate it on grounds that "the property was not sold in conformity to the provisions of Chapter 25, for fair value under the circumstances and conditions of the sale, and subsequent sale would realize a greater amount." We have concluded above that the procedure for vacating an order confirming a sheriff's sale for failure to give notice of homestead exemption as set forth in § 25-1531 does not apply to an action to foreclose a lien for taxes represented by a

tax sale certificate. Thus, the cross-appeal presents the question of whether the district court erred in not vacating the order on one or both of the alternative grounds now urged by Empire Title. In civil cases, a court of general jurisdiction has inherent power to vacate or modify its own judgments at any time during the term at which they are rendered. *Manske v. Manske*, 246 Neb. 314, 518 N.W.2d 144 (1994); *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993). We review a ruling on a motion to vacate for abuse of discretion. See *Roemer v. Maly*, 248 Neb. 741, 539 N.W.2d 40 (1995).

█ Empire Title's first argument on cross-appeal is that Destiny 98 failed to comply with the requirements of Neb. Rev. Stat. § 25-520.01 (Reissue 1995) with respect to mailing published notice of the sheriff's sale to the Miodowskis. Assuming without deciding that Empire Title has standing to raise this issue on appeal, we nevertheless decline to reach it. Neither Empire Title nor the Miodowskis alleged inadequate notice of the sale in their motions to vacate the order of confirmation. Compare, *KLH Retirement Planning v. Okwumuo*, 263 Neb. 760, 642 N.W.2d 801 (2002), and *Kleeb v. Kleeb*, 210 Neb. 637, 316 N.W.2d 583 (1982) (both asserting inadequacy of notice as basis for setting aside sheriff's sales prior to confirmation and assigning such error on direct appeal from orders confirming sales). Although counsel for Empire Title alluded to this issue in oral argument before the district court, it was not specifically alleged in any pleading or motion filed in the case. We have held that the purpose of pleadings is to frame the issues upon which a cause of action is to be tried, and the issues in a given case will be limited to those which are pled. *Sydow v. City of Grand Island*, 263 Neb. 389, 639 N.W.2d 913 (2002); *Fackler v. Genetzky*, 263 Neb. 68, 638 N.W.2d 521 (2002). The same principles apply to a motion requesting that a court exercise its inherent power to vacate a prior judgment. Based upon this record, we conclude that the issue of whether the Miodowskis received adequate notice of the sheriff's sale was not properly raised in the district court as a basis for vacating the order confirming the sale, and we decline Empire Title's request that we reach it as "plain error." Thus, Empire Title's first assignment of error is without merit.

In its second assignment of error, Empire Title contends that the district court should have vacated its order confirming the sale on grounds that there was a "shocking discrepancy" in the sale price of the property. It bases its argument on an appraisal of the subject property at a value of $80,000 and its own "Irrevocable Minimum Offer" to pay at least $12,000 for the property, neither of which were shown to have been before the district court when it confirmed the sheriff's sale on August 21, 2003. In *Kleeb v. Kleeb*, 210 Neb. at 643, 316 N.W.2d at 588, an appeal from an order confirming a partition sale, we considered the significance of two " 'upset' bids," the first made after the sale and prior to confirmation, and the second made during the pendency of the appeal from the order confirming the sale. With respect to the first, we noted that

> [a]n upset bid following a judicial sale and before a final confirmation should be considered only when it affords convincing proof that the property was sold at an inadequate price and that a just regard for the rights of all concerned and the stability of judicial sales permits its acceptance.

*Id.* at 644, 316 N.W.2d at 588. We held that the trial court did not abuse its discretion in confirming the sale notwithstanding notification during the confirmation hearing of a slightly higher bid made by an unknown party. We also declined to remand the matter for a new sale on the basis of the second upset bid, even though it was significantly higher than the sale price. We noted that "[u]pset bids to set aside public sales of property in this situation must end somewhere . . . ." *Id.* at 647, 316 N.W.2d at 589. The same reasoning is even more compelling here, where the order confirming the sheriff's sale had become final before any effort was made to show that the sale price was inadequate. Accordingly, assuming without deciding that Empire Title has standing to raise this issue, we find no merit in its argument that the district court abused its discretion in not vacating the order confirming the sale on the basis of the upset bid and appraisal submitted after the order had become final.

## CONCLUSION

We affirm only that part of the judgment of the district court denying Bel Fury's application for attorney fees. We reverse that

part of the judgment which vacated the August 21, 2003, order confirming the sale based upon our determination that the district court erred in concluding that the Miodowskis had a legal right to notice of homestead exemption rights prior to confirmation. Accordingly, the cause is remanded to the district court with directions to reinstate the order confirming the sale and for such further proceedings consistent with this opinion as may be necessary to conclude the foreclosure.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.